**John W. WILKINSON, and John W. Wilkinson, Individual Retirement Account, Plaintiffs/Appellees,**

v.

**DEAN WITTER REYNOLDS, INC., a foreign corporation, and Steve Dodson, an individual, Defendants/Appellants.**

No. 86150.

Supreme Court of Oklahoma.

March 4, 1997.

Charles E. Geister, III, Phillip G. Whaley, Oklahoma City, OK, for Defendants/Appellants.

Bradley K. Beasley, David B. McKinney, Sheila M. Powers, Tulsa, OK, for Plaintiffs/Appellees.

WATT, Justice.

This appeal arose from a dispute between Plaintiff/Appellee, John W. Wilkinson, and his broker, Dean Witter Reynolds, over Steve Dodson's handling of Wilkinson's Individual Retirement Account. Dodson was the Dean Witter Reynolds employee who handled Wilkinson's IRA. Wilkinson alleged that Dodson improperly liquidated $380,260 of Wilkinson's IRA assets and converted them to a term trust, which substantially reduced the value of the IRA.

---

**19.** *Darco Transportation v. Dulen,* supra, note 2 at      594.

## FACTS

Wilkinson has five separate accounts with Dean Witter Reynolds. Only the IRA, however, is in Wilkinson's name alone. The first of the other four accounts, the Joint Account, is jointly owned by Wilkinson and his wife; the second, the Aviation Account, is owned by Wilkinson Aviation Consulting, Inc.; the third, the Family Account, is owned jointly by Wilkinson, his wife, and their two children; and the fourth, the Trust Account, is held by Wilkinson and his wife as co-trustees of the John W. and Geraldine Wilkinson Family Trust.

Wilkinson's IRA account has no provision requiring arbitration of disputes over the account. The IRA and the joint account were opened the same day, March 19, 1987. When opened, neither the IRA nor the Joint Account contained an arbitration provision. In 1988 and 1992 Wilkinson and his wife signed agreements covering the Joint Account that superseded the original 1987 agreement, and included an arbitration provision. Dean Witter Reynolds sought no change in the IRA, and the IRA continued to contain no arbitration provision. In fact, Dean Witter Reynolds never presented Wilkinson with an agreement to arbitrate disputes arising from the IRA. Apparently the Aviation Account, opened in 1989, contained no arbitration provision.

Wilkinson, his wife, and children, opened the Family Account in 1991. It contained an arbitration provision, as did the Trust Account, which Wilkinson and his wife opened as co-trustees in 1992.

The three accounts containing arbitration provisions differ from the IRA in another important respect: each of these three accounts was a margin account. Under the terms of these margin accounts the account owner was allowed to buy securities on margin, that is on credit; Dean Witter Reynolds had express discretion to sell its margin account customers' assets to satisfy margin requirements. The IRA account agreement prohibited Dean Witter Reynolds from investing or reinvesting IRA assets except at the direction of Wilkinson, and expressly stated that Dean Witter Reynolds had no discretionary investment responsibility.

Dean Witter Reynolds claims that the arbitration provisions apply to the IRA despite the fact that the IRA account agreement itself contains no arbitration provision. Dean Witter Reynolds relies on the following language concerning arbitration contained in the margin accounts:

I agree and by carrying my accounts you agree that all controversies between me or my agents or you and your agents or representatives or employees arising out of or concerning any such accounts, any transactions between us or for such accounts, or the construction, performance or breach of this or any other agreement between us, whether entered into prior to, on or subsequent to the date below, shall be determined by arbitration only. . . .

The term "I" refers to those who signed each agreement. Thus, "I" as used in the margin accounts identifies different legal entities, joint-tenants and co-trustees, than does the "I" used in the IRA, which refers to Wilkinson alone.

## ISSUE

Does the fact that the Joint Account, Family Account, and Trust Account each contained an arbitration provision establish that the parties intended disputes arising out of the IRA to be subject to arbitration? We answer no.

## DISCUSSION

Dean Witter Reynolds correctly observes that arbitration agreements covering brokerage accounts are governed by the Federal Arbitration Act, and that under the Act an arbitration provision in a contract "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C.A. § 2. The Act has been interpreted to require that "any doubt as to the scope of arbitrable issues should be resolved in favor of arbitration. . . ." *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.* 460 U.S. 1, 24–25, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983).

Despite the Act's strong policy favoring arbitrability, the United States Supreme Court has held that "the first task of a court asked to compel arbitration of a dispute is to

determine whether the parties agreed to arbitrate that dispute." *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 626, 105 S.Ct. 3346, 3353, 87 L.Ed.2d 444 (1985). The interpretation of an arbitration agreement under the Act is governed by "general state-law principles of contract interpretation." *Volt Info. Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ.,* 489 U.S. 468, 475, 109 S.Ct. 1248, 1254, 103 L.Ed.2d 488 (1989).

Turning now to an analysis of what the parties intended with respect to the IRA, we agree with the trial court's finding that there was no agreement between the parties to submit disputes arising out of the IRA to arbitration. The parties were different as to each account, and the nature of the accounts containing arbitration provisions was significantly different from the IRA. Further, Dean Witter Reynolds could have easily presented Wilkinson with a version of the IRA account agreement that called for arbitration at any time before the dispute arose, but Dean Witter Reynolds chose not do so. If, as Dean Witter Reynolds contends, any one arbitration agreement was supposed to cover all accounts in which Wilkinson had an interest, why then did Dean Witter Reynolds require three separate agreements to cover each of the two joint accounts and the Family Trust account? That Wilkinson and others agreed to arbitrate disputes arising out of the joint and Family Trust accounts does not support Dean Witter Reynolds's claim that Wilkinson agreed to arbitrate disputes arising from his IRA. The trial court correctly found that Wilkinson and Dean Witter Reynolds made no agreement to arbitrate disputes arising under Wilkinson's IRA.

CERTIORARI PREVIOUSLY GRANTED, OPINION OF THE COURT OF CIVIL APPEALS VACATED, TRIAL COURT'S JUDGMENT AFFIRMED.

KAUGER, C.J., SUMMERS, V.C.J., and HODGES, LAVENDER, HARGRAVE, OPALA and ALMA WILSON, JJ., concur.

SIMMS, J., not participating.