2009 OK 75

**FEATHER SMOKE SHOPS, LLC, Plaintiff/Appellee,**

v.

**OKLAHOMA TAX COMMISSION, Defendant/Appellant.**

No. 106,247.

Supreme Court of Oklahoma.

Sept. 29, 2009.

Rehearing Denied June 1, 2010.

Douglas B. Allen, Larry D. Patton, Oklahoma Tax Commission, Oklahoma City, OK, for Appellant.

**1.** At issue here are Feather's shops in Osage County, White Feather Smoke Shop in Sand Springs and Little Feather Smoke Shop in Hominy, Oklahoma, and Firewalker Smoke Shop in Tulsa, Oklahoma, which is also operated by Feather. Although White Feather is the only shop included on the petition, Feather seeks relief for all three shops, claiming OTC's actions had adverse effect on the other two Osage shops.

Gentner F. Drummond, Anne M. Zimmerman, Tulsa, OK, for Appellee.

## OPINION

WATT, J.:

¶ 1 In this case we are asked to determine whether the trial court exceeded its jurisdiction and abused its discretion when it entered a temporary injunction against the State of Oklahoma, by and through the Oklahoma Tax Commission (OTC). The Plaintiff is Feather Smoke Shops, LLC, (Feather) an Oklahoma limited liability company with its principal place of business located in Osage County, Oklahoma. Feather is a tribally licensed retailer of the Osage Nation (Tribe) with a license to sell cigarettes and tobacco products for resale. It is also a holding company for three smoke shops in Osage County[1] and for other shops in different counties. The injunction entered by the trial court prevents the OTC from collecting and enforcing a payment in lieu of excise tax on the sale of cigarettes and tobacco products at Feather's Osage County shops at the rate of $8.58 per carton (.8575 per pack), instead of $2.58 per carton (.2575 per pack), which Plaintiff contends is the correct rate. We find the trial court was without jurisdiction to enter the injunction. We vacate the injunction and remand for further proceedings.

## BACKGROUND AND THE ENACTMENT OF 68 O.S. § 346

¶ 2 The dispute in this case arises out of the rights and duties of the parties under the "Tobacco Tax Compact Between the State of Oklahoma and the Osage Nation" (Compact), which became effective December 16, 2003.[2] The authority for the Compact derives from the State Legislature's enactment of 68 O.S.

Feather's witness testified that the only licensed retailer of the Tribe at the time of the hearing was Little Feather.

**2.** A termination date, subject to certain exceptions, of June 30, 2013, is included in the Compact.

Supp.1992 § 346,(amended 2004),[3] following the United States Supreme Court's decision in *Oklahoma Tax Commission v. Citizen Band Potawatomi Indian Tribe of Oklahoma,* 498 U.S. 505, 111 S.Ct. 905, 112 L.Ed.2d 1112 (1991).[4] The Court considered

3.  The current statute, 68 O.S. Supp.2004 § 346, is substantially similar to the 1992 statute which was in effect at the time the State and Tribe executed the Compact. The major differences are the addition of § 346(C)(3), giving a penalty to the Tribes for non-compliance with all terms of the Compact; and § 346(D), granting the Tax Commission the authority to conduct regular audits of wholesalers, distributors, jobbers and warehousemen which sell cigarettes or tobacco products to the Tribes. See note 4, *infra*. The current statute has been referred to by the parties without specific citation.

4.  Title 68, section 346, Oklahoma Statutes (Supp. 2004) provides:

   A.  The Legislature finds that:
   1.  Federal law recognizes the right of Indian tribes or nations to engage in sales of cigarettes and tobacco products to their members free of state taxation;
   2.  The doctrine of tribal sovereign immunity prohibits the State of Oklahoma from bringing a lawsuit against an Indian tribe or nation to compel the tribe or nation to collect state taxes on sales made in Indian country to either members or nonmembers of the tribe or nation without a waiver of immunity by the tribe or nation or congressional abrogation of the doctrine; and
   3.  The Supreme Court of the United States, in *"Oklahoma Tax Commission v. Citizen Band Pottawatomie [Potawatomi] Indian Tribe of Oklahoma"*, suggested that a state may provide other methods of collection of state taxes on sales of cigarettes and tobacco products made by Indian tribes or nations to persons who are not members of the tribe or nation, such as entering into mutually satisfactory agreements with Indian tribes or nations.
   B.  It is the intent of the Legislature to establish a system of state taxation of sales of cigarettes and tobacco products made by federally recognized Indian tribes or nations or their licensees, other than such tribes or nations which have entered into a compact with the State of Oklahoma pursuant to the provisions of subsection C of this section, under which the rate of payments in lieu of state taxes is less than the rate of state taxes on other sales of cigarettes and tobacco products in order to allow such tribes or nations or their licensees to make sales of cigarettes and tobacco products to tribal members free of state taxation.
   C.  The Governor is authorized by this enactment to enter into cigarette and tobacco products tax compacts on behalf of the State of Oklahoma with the federally recognized Indian tribes or nations of this state. The compacts shall set forth the terms of agreement between the sovereign parties regulating sale of cigarettes and tobacco products by the tribes or nations or their licensees in Indian country. All sales in Indian country by those compacting tribes or nations and their licensees shall be exempt from the taxes levied pursuant to the provisions of Section 301 et seq., Section 401 et seq. and Section 1350 et seq. of Title 68 of the Oklahoma Statutes and Sections 349 and 425 of this title, subject to the following terms and conditions:
   1.  A payment in lieu of state sales and excise taxes, as provided for in said compact, shall be paid to the State of Oklahoma by the tribes or nations, their licensees or their wholesalers upon purchase of all cigarettes and tobacco products intended for resale in Indian country by the tribes or nations or their licensees;
   2.  All cigarettes and tobacco products sold or held for sale to the public, without distinction between member and nonmember sales, shall bear a payment in lieu of tax stamp evidencing that payment in lieu of state taxes has been paid to the state. State and tribal officials may provide for use of a single joint stamp evidencing payment of both the payment in lieu of tax as specified in a compact pursuant to the provisions of this section and any tax levied by a tribe or nation;
   3.  In the event that a compacting tribe or nation fails to comply with all terms and conditions of the compact including, but not limited to, requirements to include all state taxes required by the terms of the compact to be collected by the tribe or nation in the price of its cigarettes or tobacco products, the tribe or nation shall not be eligible to receive any payment due from the state pursuant to the terms of the compact for the tax-reporting period during which the noncompliance occurred;
   4.  Records of all sales of cigarettes and tobacco products to the tribes or nations and their licensees shall be kept by all wholesalers doing business in the State of Oklahoma and shall be made available for inspection by state officials on a timely basis. Copies of all invoices of wholesale sales of cigarettes or tobacco products to tribally owned or licensed retail stores shall be forwarded by the wholesaler to the Oklahoma Tax Commission; and
   5.  For purposes of a compact pursuant to the provisions of this section, the term "tribal licensee" shall only extend to:
      a.  members of the tribe or nation, and
      b.  business entities in which the tribe or nation or tribal members have a majority ownership interest.
   D.  In addition to any other authority granted by law, the Tax Commission shall regularly conduct an audit of wholesalers, distributors, jobbers and warehousemen selling cigarettes or tobacco products to a federally recognized

whether the State of Oklahoma could legally sue the Tribe for taxes on sales of cigarettes and tobacco products, sold either to members or nonmembers of the Tribe, at its tribal stores within Oklahoma. The Court found the doctrine of tribal sovereign immunity prohibited the State from bringing a lawsuit against the Tribe to collect state taxes on sales to either members or nonmembers of the Tribe, absent the Tribe's waiver of immunity or Congressional abrogation of the doctrine. *Oklahoma Tax Commission v. Citizen Band Potawatomi Indian Tribe of Oklahoma*, 498 U.S. 505, 510, 111 S.Ct. 905, 910. However, the Court held the Tribe's sovereign immunity did not deprive the State of its authority to tax sales to nonmembers of the Tribe at the Tribe's store. 498 U.S. at 512, 111 S.Ct. at 911. Moreover, the Court reiterated that tribal sellers have an obligation to assist the State in the collection of valid state taxes on sales to nonmembers at Indian stores on reservation lands. *Id.*, citing *Washington v. Confederated Tribes of Colville Indian Reservation*, 447 U.S. 134, 100 S.Ct. 2069, 65 L.Ed.2d 10 (1980) and *Moe v. Confederated Salish and Kootenai Tribes of Flathead Reservation*, 425 U.S. 463, 96 S.Ct. 1634, 48 L.Ed.2d 96 (1976). Additionally, the Court suggested alternative methods for collection of taxes on sales to nonmembers of the Tribe. One such method was the adoption by the State and Tribe of "a mutually satisfactory regime for the collection of this sort of tax," *Oklahoma Tax Commission v. Citizen Band Potawatomi Indian Tribe*, 498 U.S. at 514, 111 S.Ct. at 912, citing 48 Stat. 987, as amended, 25 U.S.C. § 476. In response, our Legislature enacted 68 O.S. Supp.1992 § 346. See § 346(A)(3).[5]

## THE COMPACT

¶ 3 The Compact, effective December 16, 2003, provides the Tribe will pay 25% of all applicable excise taxes[6] which were effective as of January 1, 2003, and 100% of all increases enacted by the State after January 1, 2004, with exceptions noted. At the time the Compact was executed, the 25% rate was $2.58 per carton of ten packs ($.2575 per pack). See Compact, ¶ 3.[7] However, the compact provided that the Tribe would not be required to pay the increase in Oklahoma taxes after January 1, 2004, in the following cases:

1. At any of its retail businesses within 20 miles of the Kansas state line **until Kansas increases its taxes on tobacco products** [emphasis added];

2. At its existing retail business on Highway 99 in Pawhuska and at a future retail business to be located "on the corner of 15th Street and Highway 99" in Pawhuska **until Kansas increases its tax on tobacco products;**[8] [emphasis added] and

3. On products bought and sold at any of its retail businesses within 10 miles of a retail business which:

   (a) was in operation on January 1, 2003,

   (b) was owned by a tribe subject to a compact,

   (c) under which the Tribe was obligated to pay only 25% of all applicable excise and sales taxes,

**until such tribe's compact terminates or is cancelled by mutual agreement of the parties.** [emphasis added].

Compact, ¶ 3.

¶ 4 Another provision of the Compact which could affect the rate required from the

Indian tribe or nation or a tribally owned or licensed store to determine if the correct amount of tax payable under this act has been collected and to determine compliance with any and all compacts.

5. See note 4, *supra*.

6. This tax rate is known as the "original compact rate." See OAC 710:70–7–8(b)(2), Oklahoma Administrative Code, which provides:

   (2) **Original compact rate.** The original compact rate is 25.75 cents per pack. This rate applies to sales made by tribes or their licensees with an existing compact with the State of Oklahoma in which the tax rate is specified as

twenty-five percent (25%) of the rate applied to non-tribal sales.

7. The Compact also provides that the increase in tax under the compact will not be effective until the effective date of the increase in tax for non-tribal retailers.

8. Once the increase is effective, the Tribe shall pay on all sales within 20 miles of the state line the lesser of:

   a. Increases enacted by Oklahoma after January 1, 2004; or

   b. A sum equal to increase in tobacco taxes by Kansas which are applicable to non-tribal sales in Kansas.

Tribe is paragraph 16, informally referred to as the "favored nation clause," (FNC). It provides:

16. Should the State at some future date enter into a tobacco tax compact with another Indian tribe with terms more favorable to the other Indian tribe than those in this compact, such more favorable terms may, at the option of the Nation, automatically be incorporated herein.

¶ 5 After the Compact became effective, the Tribe, through its Principal Chief Jim Gray, sent a letter dated December 3, 2004, via FAX to the OTC, advising it of more favorable provisions included in later executed compacts. These compacts contained a lower tax rate for the other tribes which were located within 20 miles of another state's border, as well as more favorable terms for shops within 10 miles of other tribes' shops. In particular, the Chief noted Choctaw Nation smoke shops located within 20 miles of the Texas border, pay $.58 per carton. Because the Choctaw Nation's Compact contains savings clauses identical to those in the Osage Compact,[9] the Chief asserted the Tribe's right to pay the tax at the $.58 per carton rate ($.0575 per pack).

¶ 6 Also noted in the letter were references to later executed compacts between the State and the Cherokee Nation, the absentee Shawnee Tribe, the Iowa Tribe and the Seminole Nation. The alleged "more favorable" provision in the later compacts related to the distance between shops of different tribes, similar to the Osage Compact's provision saving the Tribe from incurring Oklahoma's 2004 tax increase.[10] The Chief advised the OTC that the 10 mile provision in its Compact was enlarged to 35 miles in the compacts mentioned. The letter, admitted as

Defendant's Exhibit 6 at the hearing on the injunction, provided as follows:

[S]ubsequent to the execution of the Osage Compact, several tribes signed Compacts under which the ten-mile barrier was extended to thirty-five miles. In particular, the **Cherokee Nation Compact** executed on February 9, 2004, extends the ten-mile barrier to thirty-five miles for twenty-eight Cherokee smoke shops, presumably because these smoke shops could not come within the ten-mile limit. In addition, the absentee Shawnee Tribe's Compact executed January 14, 2004 also provides for a thirty-five mile barrier for its facility located in Norman, Oklahoma. The other two Shawnee smoke shops are within the ten-mile barrier. I note as well that both the Iowa Tribe and Seminole Nation have thirty-five mile barriers for designated smoke shops. It is our position that the thirty-five mile barrier is automatically incorporated into the Osage Compact pursuant to Section 16[11] of the Compact .... [emphasis added].

. . .

Accordingly, the Tribe is automatically incorporating the thirty-five mile barrier into its Compact for those shops that are unable to come within the ten-mile barrier.

¶ 7 At the hearing, OTC's witness testified, and it is stated in its briefs, that the OTC considered Exhibit 6 an amendment to the Compact, thus incorporating the exception rate ($.58 per carton) and the 35–mile barrier between shops into the Compact.[12] This apparently continued until July 17, 2008, at which time the OTC notified Plaintiff that the applicable rate for Feather and its shops would change from the exception rate

---

9. See paragraph 3, *supra,* of this Opinion.

10. See paragraph 3, *supra,* of this Opinion.

11. Paragraph 16 of the Compact is set out at ¶ 4, *supra,* of this Opinion.

12. Janine McConville testified in her capacity as a "revenue unit manager" with the OTC. She testified that based on the OTC's receipt of Exhibit 6 and consultation with the Governor's office, the OTC "allowed the Favored Nation clause of the **Cherokee** [compact] to be used for

the Osage, which adjusted several of the Osage shops to—from a 10–mile radius to, I believe it's a 35–mile radius of any tribal outlet that has a better rate from another nation." [emphasis added]. She agreed that Exhibit 6 was treated as an amendment to the Osage Compact.

Counsel for the OTC stated at the hearing: "This shop was, until July 17, an exception rate retailer. It got that exception rate pursuant to the compact by being within a certain distance of an old or original rate location of another tribe. In this case, it was the **Pawnee**." [emphasis added].

($.0575/pack, $.58/carton) to the "new compact rate" ($.8575/pack, $8.58/carton). The stated reason for the change was the termination of the Pawnee Tribe's compact which resulted in the "non-compact" ($.7725/pack) rate for the Pawnee Tribe.

¶ 8 Plaintiff then filed this declaratory judgment action, pursuant to 12 O.S. Supp. 2004 §§ 1651–1657, alleging the OTC's actions violated the U.S. and Oklahoma Constitutions. Plaintiff also sought injunctive relief, asking the court to order OTC to apply the tax rate of 25% of all applicable excise taxes, Plaintiff's last legal compact rate.

¶ 9 Feather contends OTC's actions violate the compact under the favored nation clause (FNC) provision of the Compact, which would entitle the Tribe's shops to the most favorable tax rate enjoyed by another tribe. Feather contends the most recent such compact is the Kaw Nation Compact.

## SUBJECT MATTER JURISDICTION

¶ 10 The above discussion about the Compact is necessary to consider our jurisdictional issue. The OTC alleges the trial court lacked subject matter jurisdiction to enter the injunction and that federal arbitration is required instead. Plaintiff argues the state district court properly exercised jurisdiction and correctly found that the relief ordered was necessary. Oklahoma's jurisprudence undoubtedly acknowledges arbitration as a valid means of settling disputes, as well as the jurisdiction of our state district courts to issue an injunction. In this case, however, the Compact contains an agreement between the Tribe and the State which determines this jurisdictional question.

¶ 11 Paragraph 11 of the Compact provides the following:

> Any dispute arising in the **interpretation or performance** of this Compact, **which is not resolved by good faith negotiations within thirty (30) days, shall be subject to binding arbitration.** Arbitration may be invoked by either party following the negotiation period should the dispute remain unresolved. Arbitration shall be the exclusive means of resolving such disputes subject only to review by the

United States District Court having jurisdiction and venue. When arbitration is invoked, a panel of arbitrators consisting of three (3) members shall be appointed. One shall be appointed by the nation and one by the State. A third shall be appointed by the other two members. The expenses of arbitration shall be born equally by the parties. The arbitrators shall adopt their own procedural rules regarding the arbitration process in conformity with the rules of the American Arbitration Association. [emphasis added].

¶ 12 The role of this Court is to determine whether there is a valid, enforceable agreement to arbitrate the dispute which is governed by principles of state law. *Rogers v. Dell Computer Corporation*, 2005 OK 51, 138 P.3d 826, citing *Wilkinson v. Dean Witter Reynolds, Inc.*, 1997 OK 20, ¶ 9, 933 P.2d 878, 880. [citations omitted]. No evidence exists that the agreement itself to arbitrate certain disputes is invalid. The Federal Arbitration Act, 9 U.S.C. §§ 1–16 (2000) (FAA), applies to contracts affecting interstate commerce. See *Allied–Bruce Terminix Companies, Inc. v. Dobson*, 513 U.S. 265, 269, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995). Under the FAA, the question of the contract's validity as a whole is submitted to arbitration. *Rogers v. Dell Computer Corporation*, 2005 OK 51, ¶ 13, 138 P.3d 826, 829, citing *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 405, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967). The FAA does not preempt state law unless the Congressional purposes and objectives embodied therein are frustrated. *Rogers v. Dell Computer Corporation*, ¶ 12, at 829, citing *Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior University*, 489 U.S. 468, 477, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989).

¶ 13 In this case, the parties appear to differ as to how to interpret a compact which has incorporated more favorable terms from the compact of another Tribe when the other Tribe's compact has terminated. The OTC contends the assessed tax increase for the Osage Tribe is due to the termination of the Pawnee Nation's compact. At different times the OTC has argued the exception rate

($.58/carton) and the extended mileage barrier (from 10 miles to 35 miles) between shops were incorporated into the Osage compact because of the Pawnee Nation's Compact. However, OTC witness McConville stated the OTC considered the mileage barrier in the Osage Compact to have been amended by Exhibit 6 which incorporated the terms of the **Cherokee** compact. Exhibit 6 itself purports to amend the tax rate to $.58/carton because of the **Choctaw** compact. Feather contends the Kaw Nation's most recent compact of July 24, 2008, with a rate of $.2575/pack, $2.58/carton, should determine its rate.[13] Does the tax rate return to the original rate in the compact, or may the compact be affected by the termination of a totally different Tribe's compact? The proper tax rate issue also certainly affects the Tribe's performance under the compact, as Feather, a licensed retailer, alleges it is unable to compete with shops paying only $.58 per carton, as opposed to its assessment of $8.58 per carton. Moreover, we note the Tribe's compact does not terminate on its own terms until 2013 [14] and that the State and the Tribe have not cancelled the compact by mutual agreement. There was also testimony that Kansas had not raised its taxes on tobacco products, a factor which avoids raising the Tribe's rates under the compact. Therefore, a possible interpretation of the Compact is that the original price of $2.58 per carton should be resumed.

¶ 14 As to OTC's other jurisdictional allegations, it argues that it is not the real party in interest because it does not set or levy the tax due; it only collects and enforces the payment of the tax due. It also claims that White Feather, a shop allegedly cancelled on January 18, 2008 at Feather's request, is not the appropriate party to bring the action. However, as noted above, Feather, the Plain-tiff, is the holding company for three Osage shops which are affected by OTC's actions. Feather is an Osage licensed tribal retailer, operating by and through its principal, under the jurisdiction of the Osage Nation, and the Compact applies to the Osage Nation's licensees, known as Tribal Retailers. Additionally, the OTC represents the State in this case as the party which enforces the appropriate tax rate. It is, in fact, specifically mentioned in 68 O.S. § 346, in which wholesalers are required to forward to the OTC all invoices of their sales to retailers. Additionally, the amendment to § 346 provides that the OTC "shall" regularly conduct audits of those selling cigarettes and tobacco to the tribes.

■ ¶ 15 We find the resolution of this case is governed by the terms of this Compact. Section 11 requires submitting issues related to the "interpretation or performance" of the Compact to federal arbitration. We therefore hold the trial court did not have jurisdiction to enter the temporary injunction. The Tribe and the State agreed to federal arbitration under these circumstances, and we will not rewrite the compact. In fact, the letter of December 3, 2004, from Chief Gray to the OTC contains an acknowledgment that arbitration is a possibility. The letter provides in the last paragraph, in part:

> [I]f you do not agree with our analysis as set forth in this letter, please let me know immediately so that we can attempt to come to a consensus and **negotiate in good faith in accordance with Section 11** [15] **of the Compact** .... [emphasis added.]

¶ 16 The injunction is vacated, and this case is remanded to the trial court for fur-

---

**13.** The OTC issued a notice to wholesalers on July 25, 2008, advising them that the new Kaw Nation Compact was designated as the "State/Tribal Kansas Border" rate of $0.2575/pack of 20 cigarettes. Feather presented this notice as Plaintiff's Exhibit 2.

**14.** Paragraph 12 of the Compact provides:
    12. This agreement shall terminate on June 30, 2013. At the end of said term, this compact shall continue in full force and effect for consecutive terms of one (1) year, unless either party hereto gives to the other written notice that the compact shall terminate at the end of the present term, provided that such notice is given at least six (6) months prior to said termination. Nothing in this Compact shall prevent the parties by mutual agreement from establishing an earlier termination date or otherwise modifying this agreement.

**15.** Section 11 of the Compact is set out in full at paragraph 11 of this Opinion.

ther proceedings in accordance with the views expressed in this opinion.

**VACATED AND REMANDED FOR FURTHER PROCEEDINGS.**

EDMONDSON, C.J., TAYLOR, V.C.J., HARGRAVE, OPALA, KAUGER, WATT, WINCHESTER, COLBERT, JJ., concur.

REIF, J., concurs in part, dissents in part.

REIF, J., concurring in part; dissenting in part.

¶1 I agree that the majority opinion has focused on the pertinent provisions in the Osage Nation Tobacco Tax Compact that are dispositive of the tax rate dispute between the parties. I likewise agree that the majority opinion has identified the circumstances under which disputes arising under the Compact are subject to arbitration. I disagree, however, with the majority's conclusion that the dispute in question is subject to arbitration as provided in the Compact.

¶2 I believe the "dispute" is not subject to arbitration because it is *not* one "arising in the interpretation or performance of th[e] Compact." I reach this conclusion because the undisputed material facts show that the State, through the actions of the Oklahoma Tax Commission, is simply in breach of the unambiguous "favored nations" provision of the Compact. This provision grants the Osage Nation the "option" to "automatically . . . incorporate" more favorable terms of a tobacco tax compact with another Indian tribe into the Osage Nation Compact. The State, through the Oklahoma Tax Commission, admits that the Osage Nation exercised this "option" and chose to incorporate the favorable terms of the State's compacts with the Cherokee Nation and Choctaw Nation, inter alia. The Oklahoma Tax Commission recognizes that this action constituted an amendment to the Compact, including the "exception rate" of $.58 per carton. Nothing in the Compact ties or burdens such amendment of the Compact to the continuation of any comparable terms that may have been previously incorporated from another compact, like the Pawnee Compact in question.

¶3 In my opinion, there is no uncertainty about the meaning of any term in the Com-

pact, nor any doubt about the performance due under any term. There is simply unjustified refusal of the Oklahoma Tax Commission to perform its ministerial duties under the Compact and a suit in district court for injunctive relief is one of the appropriate remedies for such a breach of contract. Under the record presented, I do not believe the trial court either exceeded its jurisdiction or abused its discretion in issuing the injunction.