2010 OK CIV APP 36

**Amanda E. MORAN, Plaintiff/Appellant,**

v.

**EDWARD D. JONES & CO., L.P., a Foreign Corporation; Edward Jones Financial Companies, L.L.L.P., a Foreign Corporation; Edward Jones Trust Company, a Foreign Corporation; Edward Jones Investments, a Foreign Corporation; and Gary W. Moran, an Individual, Defendants/Appellees.**

**No. 107,679.**

Court of Civil Appeals of Oklahoma, Division No. 4.

Feb. 25, 2010.

---

Ryan M. Oldfield, Oldfield & Buergler, P.L.L.C, Oklahoma City, OK, for Appellant.

Johnny R. Blassingame, Kerr, Irvine, Rhodes & Ables, Oklahoma City, OK, for Edward D. Jones & Co., L.P.

Gary A. Rife, Rife Walters & Bruehl, LLP, Oklahoma City, OK, for Gary W. Moran.

JERRY L. GOODMAN, Judge.

¶ 1 Amanda E. Moran (Moran) appeals the trial court's September 29, 2009, order granting Edward D. Jones & Co., L.P., a Foreign Corporation; Edward Jones Financial Companies, L.L.L.P., a Foreign Corporation; Edward Jones Trust Company, a Foreign Corporation; Edward Jones Investments, a Foreign Corporation's (collectively, "Edward Jones") motion to compel arbitration. Based

upon our review of the facts and applicable law, we reverse and remand for further proceedings consistent with this opinion.

## FACTS

¶ 2 Moran filed a petition on April 15, 2009, against Edward Jones and her father, Gary W. Moran (Father). Moran alleged Father, while an employee or agent of Edward Jones, mismanaged, mishandled, misappropriated, and converted funds belonging to her held in a custodial trust account (Custodial Trust Account) at Edward Jones. More specifically, Moran alleged that on March 23, 1996, Father wrongfully took $25,836.00 of her money to purchase a vehicle. On August 4, 2009, Edward Jones filed a motion to compel arbitration, asserting arbitration was binding as to all controversies arising out of or relating to Moran's accounts or transactions with it. Edward Jones attached an Edward Jones Account Agreement which contained the following arbitration agreement:

> **The Edward Jones Account Agreement and Disclosure Statement contains on page 20 a binding arbitration provision which may be enforced by the parties.** By my/our signature(s) below, I/we have received a copy of this document including a schedule of fees and Edward Jones Privacy Notice and agree to its terms and conditions. . . . (Emphasis in original)

Moran and Father signed this document on or about January 6, 2004 (the "2004 Agreement"). Page 20 provides, in relevant part:

**ARBITRATION AGREEMENT**

1. **Arbitration is final and binding on the parties.**

2. **The parties are waiving their right to seek remedies in court, including the right to jury trial.**

3. **Pre-arbitration discovery is generally more limited than and different from court proceedings.**

4. **The arbitrators' award is not required to include factual findings or legal reasoning and any party's right to appeal or to seek modification of rulings by the arbitrators is strictly limited.**

5. **The panel of arbitrators will typically include a minority of arbitrators who were or are affiliated with the securities industry.**

**I agree that this Agreement shall be governed by the laws of the State of Missouri without giving effect to the choice of law or conflict of laws provisions thereof. Any controversy arising out of or relating to any of my accounts or transactions with you, your officers, directors, agents, and/or employees for me, to this Agreement, or to the breach thereof, or relating to transactions or accounts maintained by me with any of your predecessor or successor firms by merger, acquisition or other business combinations from the inception of such accounts shall be settled by arbitration in accordance with the rules then in effect of the Board of Directors of the New York Stock Exchange, Inc. or the National Association of Securities Dealers, Inc. as I may elect. . . .** (Emphasis in original)

Pursuant to this arbitration agreement, Edward Jones asserted Moran had agreed to arbitrate all claims arising out of or relating to any of her accounts with Edward Jones or its employees or agents.

¶ 3 Moran filed a first amended petition on August 5, 2009, adding the allegation that Father, "in furtherance of his and Defendant Edward Jones fraud against" her and "in an attempt to coverup [sic] conceal and limit exposure and liability . . . persuaded and coerced" her into executing the 2004 Agreement which contained the arbitration agreement at issue. Edward Jones filed a renewed motion to compel arbitration on August 17, 2009, asserting that in addition to the 2004 Agreement, Moran had also executed on June 16, 1997, an Acknowledgement for Full Service and Customer Loan Accounts for another Customer Account Agreement (the "1997 Agreement"). The 1997 Agreement also contains an arbitration agreement, which provides in relevant part:

> [A]ny controversy arising out of or relating to any of my accounts or transactions with you, your officers, directors, agents and/or employees for me, or to this agreement, or

the breach thereof, or relating to transactions or accounts maintained by me with any of your predecessor or successor firms by merger, acquisition or other business combinations from the inception of such accounts shall be settled by arbitration in accordance with the rules then in effect of the Boards of Directors of the New York Stock Exchange Inc., the American Stock Exchange, Inc., the Municipal Securities Rulemaking Board, or the National Association of Securities Dealers, Inc. as I may elect. . . .

Thus, pursuant to the 1997 Agreement and the 2004 Agreement, Edward Jones asserted Moran had twice agreed to arbitrate any claim arising out of or relating to any of her accounts with Edward Jones or its employees or agents.

¶ 4 Moran filed a second amended petition on August 19, 2009, adding the allegations that on July 16, 1997, after she reached the age of majority, the Custodial Trust Account was closed and a new account was opened with Father, a Joint Investment Account. Father, still an employee or agent of Edward Jones, continued to manage and was a joint signatory on the account. Moran further alleged Father and Edward Jones, "in furtherance of [their] fraud . . . and in an attempt to coverup [sic] conceal and limit exposure and liability for the same, persuaded, induced and coerced [Moran] into executing [the 1997 Agreement and 2004 Agreement,]" thereby attempting to force her to waive her right to a jury trial by compelling arbitration of all claims.

¶ 5 Moran filed a response to the motion to compel on August 20, 2009, asserting she was only seeking damages associated with the actions or inactions of Edward Jones or Father that occurred in relation to the Custodial Trust Account, which pre-dates the arbitration agreements that were entered into for purposes of establishing the Joint Investment Account. Moran argued her claims arose before and occurred prior to the signing of the 1997 Agreement and 2004 Agreement and nothing in the language of the arbitration agreements state it modifies, supersedes, or retroactively applies to prior, unrelated accounts between the parties.

Thus, the arbitration agreements are not applicable to her claims in this case.

¶ 6 Moran further argued that if the court finds the arbitration agreement should be retroactively applied, she was fraudulently induced, persuaded, and coerced into signing the arbitration agreements by Father while acting as an employee and/or agent of Edward Jones. Moran requested, pursuant to Rule 4(c), Rules for District Courts, 12 O.S. 2001 and Supp.2003, Ch.2.App., that the court hold an evidentiary hearing on this issue. Finally, Moran asserted the arbitration agreements did not apply to her tort claims.

¶ 7 Edward Jones filed a reply on August 28, 2009, asserting the scope of the parties' arbitration agreements clearly encompasses the disputes at issue, including tort claims. The language provides Moran will arbitrate "[a]ny controversy arising out of or relating to any of my accounts . . . from the inception of such accounts. . . ." Thus, the arbitration agreement contained in the 1997 Agreement and 2004 Agreement apply to claims relating to any of Moran's accounts since their inception, including her Custodial Trust Account. Finally, Edward Jones asserted Moran's conclusory allegations of fraud were insufficient to meet the particularity requirements to assert such a claim under 12 O.S.2001, § 2009.

¶ 8 In an order filed on September 29, 2009, the trial court, without specific findings, granted Edward Jones' motion to compel arbitration. The court did not conduct an evidentiary hearing as requested by Moran before compelling arbitration. Moran appeals.

## STANDARD OF REVIEW

¶ 9 The question as to the existence of a valid, enforceable agreement to arbitrate all claims is a question of law to be reviewed *de novo*. *Oklahoma Oncology & Hematology v. U.S. Oncology, Inc.*, 2007 OK 12, ¶ 19, 160 P.3d 936, 944.

## ANALYSIS

¶ 10 Both federal and Oklahoma statutes provide arbitration agreements are

valid, enforceable, and irrevocable except upon grounds which exist at law or in equity for the revocation of any contract. *See* Oklahoma Uniform Arbitration Act (OUAA), 12 O.S.2001 and Supp.2006, § 1851 et seq.; Federal Arbitration Act (FAA), 9 U.S.C.A. § 1 *et seq*. Fundamental to the right to compel arbitration is an agreement to arbitrate the particular dispute at issue, and "the courts will not impose arbitration upon parties where they have not agreed to do so." *Oncology & Hematology P.C.*, 2007 OK 12, at ¶ 22, 160 P.3d at 944; *Voss v. City of Oklahoma City*, 1980 OK 148, ¶ 5, 618 P.2d 925, 929. Under the FAA, however, any doubt as to the scope of arbitrable issues is resolved in favor of arbitration. *Wilkinson v. Dean Witter Reynolds, Inc.*, 1997 OK 20, ¶ 8, 933 P.2d 878, 879.

¶ 11 To assure parties have consented to arbitration, the trial court will decide whether there is a valid enforceable arbitration agreement, whether the parties are bound by the arbitration agreement, and whether the parties agreed to submit a particular dispute to arbitration. *U.S. Oncology, Inc.*, 2007 OK 12, at ¶ 22, 160 P.3d at 944–45. Arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed to submit. *AT & T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986). In determining whether the parties have agreed to arbitrate a dispute, the general rule is that courts should apply ordinary state-law principles that govern the formation of contracts. *Rogers v. Dell Computer Corp.*, 2005 OK 51, ¶ 19, 138 P.3d 826, 831. If the trial court finds a valid obligation to arbitrate, the trial court's inquiry normally ceases and the matter should be resolved by an arbitrator.

¶ 12 On appeal, Moran contends the trial court erroneously granted the motion to compel because her claims against Defendants arise out of their handling of the Custodial Trust Account, in which no arbitration agreement exists. Moran asserts her claims arose prior to the 1997 Agreement and 2004 Agreement and nothing in the language of the arbitration agreements state it modifies, supersedes, or retroactively applies to a prior, unrelated, closed account between the parties. Thus, the arbitration agreements are not applicable to her claims in this case.

¶ 13 The issue in the present case is whether the arbitration agreements cover the dispute at issue despite the fact the dealings giving rise to the dispute occurred prior to the execution of the agreements. Whether the arbitration agreements apply to disputes and controversies prior to the date the agreements were executed must be decided on the basis of the express and plain language of the agreements. The arbitration agreements provide, in relevant part:

> **[A]ny controversy arising out of or relating to any of my accounts or transactions with you, your officers, directors, agents, and/or employees for me, or to this agreement, or the breach thereof, or relating to transactions or accounts maintained by me with any of your predecessor or successor firms by merger, acquisition or other business combinations from the inception of such accounts shall be settled by arbitration.** ... (Bold in original.)

¶ 14 The arbitration agreements provide it applies to any controversy arising out of any of Moran's accounts with Edward Jones. Although the language is broad, there is no explicit, retroactive application language in the arbitration agreements providing an agreement to arbitrate preexisting disputes, controversies, or claims. Further, there is no language in the arbitration agreements providing it shall apply retroactively to a closed account. The record on appeal provides that at the time Moran executed the 1997 Agreement and the 2004 Agreement containing the arbitration agreements at issue, the Custodial Trust Account, from which the disputes at issue arose, was closed. We reiterate that parties are bound to arbitrate only those disputes they specifically agree to arbitrate. See *Volt Info. Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 478, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989) ("[T]he FAA does not require parties to arbitrate when they have not agreed to do so.").

¶ 15 In *Wilkinson v. Dean Witter Reynolds, Inc.*, 1997 OK 20, 933 P.2d 878, a client had five (5) separate accounts with Dean Witter Reynolds. Only one of the accounts, an IRA, was in client's name alone. The remaining four (4) accounts were jointly owned by client and his wife or his family. The accounts were opened at different times and all, except the IRA account, contained an arbitration agreement. Dean Witter Reynolds never presented client with an arbitration agreement covering the IRA account.

¶ 16 Client sued Dean Witter Reynolds and its employee alleging they had improperly liquidated his IRA assets and converted the funds into a term trust, thereby substantially reducing the value of the IRA. Dean Witter Reynolds sought to compel arbitration, asserting the arbitration agreements from the other accounts applied to the IRA. Dean Witter Reynolds relied on the following language from the arbitration agreements:

> I agree and by carrying my accounts you agree that all controversies between me or my agents or you and your agents or representatives or employees arising out of or concerning any such accounts, any transactions between us or for such accounts, or the construction, performance or breach of this or any other agreement between us, whether entered into prior to, on or subsequent to the date below, shall be determined by arbitration only....

¶ 17 The Oklahoma Supreme Court disagreed, finding no agreement between the parties to submit disputes arising out of the IRA to arbitration. *Id.* at ¶ 10, 933 P.2d at 879. The Court found "the parties were different as to each account, and the nature of the accounts containing arbitration provisions was significantly different from the IRA." *Id.* Thus, the Court held the trial court correctly found no valid agreement to arbitrate disputes arising under the IRA.

¶ 18 The same is true in the present case. The Custodial Trust Account was opened in Moran's name. Father was named custodian and trustee of the account. The subsequent Joint Investment Account was opened jointly in Moran and Father's name. As in *Wilkinson,* the parties and accounts are clearly different.

¶ 19 Furthermore, although the language contained in the arbitration agreements is broad and purports to cover all of Moran's accounts with Edward Jones, it does not contain language indicating an intent by the parties to retroactively modify Moran's previous, closed Custodial Trust Account. Without specific language indicating such an intent by the parties, the Court will not retroactively apply the arbitration agreements to Moran's Custodial Trust Account. The trial court's September 29, 2009, order granting Edward Jones' motion to compel was therefore in error and is reversed. Based on our resolution of this issue, we need not address Moran's remaining propositions of error.

¶ 20 REVERSED AND REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.

GABBARD, P.J., concurs; RAPP, J., not participating.