2014 OK 80

**Johnnie BOLER, Personal Representative of the Estate of Cleo Boler, Deceased, Plaintiff/Appellee,**

v.

**SECURITY HEALTH CARE, L.L.C., d/b/a Grace Living Center—Norman; Norman Properties LLC; Amity Care, LLC; Mike Dimond; and Don Greiner, individually and d/b/a Don Greiner Trustee, Kenneth D. Greiner III Revocable Trust, Beneficiary/Trustee, Defendants/Appellants.**

**No. 111,775.**

Supreme Court of Oklahoma.

Sept. 30, 2014.

Patrick M. Ryan, Phillip G. Whaley and Grant M. Lucky, Ryan Whaley Coldiron Shandy PLLC, Oklahoma City, Oklahoma, and J. Michael DeYong, Gina K. Cheatham, Deyong & Cheatham, P.A., Oklahoma City, Oklahoma, for the Appellants.

L. Ray Maples, II, Travis Dunn, Nicole R. Snapp–Holloway, Maples Law Firm, Edmond, Oklahoma, and David W. Crowe, Bailey, Crowe, Kugler & Arnold, LLP, Dallas, Texas, for the Appellee.

EDMONDSON, J.

¶1 The issue is whether the trial court erred in denying the nursing home's motion to compel arbitration. The trial judge held that the wrongful death claim belonging to Cleo Boler's statutory beneficiaries pursuant to 12 O.S.2011 § 1053 is not subject to an agreement to arbitrate contained in her nursing home's admission contract. We agree with the trial court and hold that the personal representative and the next of kin are not bound by the arbitration agreement in the contract signed on Cleo Boler's behalf. They did not sign the nursing home contract in their personal capacities and their claim is not wholly derivative of Cleo Boler's claim.

¶2 Cleo Boler was admitted to Grace Living Center—Norman (Grace), a long-term care facility in January 2010 and was a resident there until January 2012. Judy Little (also known as Julie Little), as Cleo Boler's attorney in fact, signed the admission documents which included a three-page Dispute Resolution Provision (arbitration agreement). The arbitration agreement provided that any claim, controversy, dispute or disagreement arising out of or in connection with the care rendered to Cleo Boler would be determined by submission to neutral, binding arbitration. It purported to bind not only Cleo Boler, but any future legal representatives, heirs, successors, etc., who might assert a claim against Grace.[1]

¶3 On October 28, 2011, Cleo Boler, individually, and Judy Little and Johnnie Boler

---

1. The Dispute Resolution Provision signed January 18, 2010, by Julie Little on behalf of Cleo

as attorneys in fact, sued Grace and others for negligence, violation of the Nursing Home Care Act and breach of contract regarding the care and treatment of Cleo Boler. Grace filed a Motion to Compel Arbitration, asserting that the contract was one involving interstate commerce and was valid and enforceable under the Federal Arbitration Act (FAA), which preempts contrary state law.

¶4 Cleo Boler died on June 17, 2012, before a response to the motion to compel arbitration was filed. Johnnie Boler (Boler), as personal representative of Cleo's estate, filed a motion for substitution of parties and sought to amend the petition to add survivor claims pursuant to 12 O.S. § 1051 and wrongful death claims pursuant to 12 O.S. § 1053.[2] By order filed March 7, 2013, the trial judge granted both motions. Johnnie Boler, as personal representative of Cleo Boler's estate, filed a second amended petition which brought survival claims on behalf of Cleo Boler's estate pursuant to 12 O.S. § 1051, and a wrongful death claim on behalf of Cleo Boler's beneficiaries, pursuant to 12 O.S. § 1053.[3]

¶5 Boler filed a response to Grace's Motion to Compel Arbitration arguing that

Boler provides, in pertinent part:

**DISPUTE RESOLUTION PROVISION/AGREEMENT**

1. Resident and [Grace Living Center (GLC)] acknowledge that resolving legal claims in the courts can be, and often is, time consuming and expensive. Both Resident and GLC desire to have any claim, controversy, dispute or disagreement arising out of or in connection with the care rendered to Resident by GLC and/or arising out of or in connection with the Admission Agreement pursuant to which that care is rendered, whether asserted by Resident against GLC or by GLC against Resident, resolved quickly and with a minimum of legal expense and delay.

2. Both Resident and GLC therefore agree that any claim, controversy, dispute or disagreement arising out of or in connection with the care rendered to Resident by GLC, and/or arising out of or in connection with the Admission Agreement pursuant to which said care is rendered ... including claims by Resident against GLC involving, and/or arising out of conduct committed by GLC's agents.... or others for whom and or which GLC is, may be or is asserted to be legally responsible ..., said claim, controversy, dispute or disagreement to include without limitation any claim, controversy, dispute or disagreement arising out of the provision of services by GLC, the Admission Agreement, the validity, interpretation, construction, performance and/or enforcement thereof, or which otherwise alleges violations of any state or federal law and/or otherwise seeks an award of compensatory damages, punitive damages, injunctive relief, costs and/or attorney fees (referred to subsequently as "Resident/GLC dispute"), shall be determined by submission to neutral, binding arbitration pursuant to the guidelines and requirements promulgated by federal and state law and subject to appropriate judicial review of arbitration proceedings as authorized by such laws. **By entering into this agreement, both parties explicitly waive any right to have any Resident/GLC dispute decided in a court of law or equity, whether by or before a jury or by the court itself, and instead accept the use of neu-tral, binding arbitration as the sole means of dispute resolution.** \* \* \*
\* \* \*

6. The Dispute Resolution Provision applies to and binds the Resident and GLC. In addition, it applies to and binds any and all persons and/or entities who and/or which may assert a claim on behalf of, or derived through, the Resident and/or GLC, including without limitation their legal representative, guardians, heirs, executors, administrators, estate(s), successors and assigns; further, it applies to and binds any and all persons and/or entities who and/or which are or may be legally responsible for them, or for whom and/or which may be legally responsible, including without limitation their agents, principals, employees, managers, management companies, consultants, owners, members, operators, partners, officers, directors, shareholders, insurer(s), legal representatives, guardians, heirs, executors, administrators, estate(s), successors and assigns. As such, it is recognized and agreed that this Dispute Resolution Provision survives the death, as well as the incompetency, of the Resident and cannot be revoked by said death or incompetency.
\* \* \*

NOTICE: **BY SIGNING THIS AGREEMENT THE RESIDENT AGREES TO HAVE ANY RESIDENT/GLC DISPUTE DECIDED BY NEUTRAL BINDING ARBITRATION AND WAIVES ANY RIGHT TO TRIAL IN A COURT OF LAW OR EQUITY; PROVIDED; HOWEVER, NOTHING HEREIN SHALL PREVENT THE PARTIES FROM RESOLVING ANY RESIDENT/GLC DISPUTE BY NEGOTIATION BY AND BETWEEN THEMSELVES OR BY USE OF AN AGREED UPON THIRD PARTY MEDIATOR.**
**I hereby certify that I have read, understand, and agree to the terms of this Dispute Resolution Provision.**

**2.** See footnotes 12 and 13, *infra.*

**3.** The survival claim sought compensatory, actual and punitive damages allowed by law related to

Grace could not compel his sister and himself to arbitrate their wrongful death claim because their claim is independent and did not arise until the death of Cleo Boler; further, that they did not sign the arbitration agreement in their personal capacities and were not bound by Cleo Boler's arbitration agreement. This is so, they maintain, even if Cleo Boler's claims must be arbitrated.

¶ 6 The hearing on Grace's motion to compel arbitration was held January 31, 2013, at which time the trial court addressed whether, as a matter of law, the wrongful death claim was subject to arbitration. The trial court found that wrongful death is a separate and distinct cause of action and is derivative only in the sense that the decedent must have a viable claim at the time of his death.[4] The motion to compel arbitration was denied as to the wrongful death claim and the court reserved ruling on all other issues and arguments. The trial judge did not rule on the validity of the contract, but looked solely to whether the arbitration agreement was enforceable.[5] Grace appealed, arguing that the trial court erred in relying on the Utah case of *Bybee v. Abdulla*, 189 P.3d 40 (Utah 2008), to hold that non-signatories to the arbitration agreement were not bound by it for their wrongful death claim because the claim was not wholly derivative of Cleo Boler's claim.

¶ 7 An order denying a motion to compel arbitration is an appealable order. 12 O.S. § 1879(A)(1). The existence of an agreement to arbitrate is a question of law to be reviewed de novo. *Rogers v. Dell Computer Corp.*, 2005 OK 51 ¶ 18, 138 P.3d 826, 831.

¶ 8 The Nursing Home Care Act, 63 O.S. § 1–1918, created a statutory tort with a private right of action for nursing home residents or their guardians to redress a violation of rights conferred therein. *Morgan v. Galilean Health Enterprises, Inc.*, 1998 OK 130, 977 P.2d 357, 361–62. Liability for a statutory tort is incurred when it can be shown that the plaintiff's injury resulted from a statutory violation and that the plaintiff falls into a class of persons whom the legislature intended to protect. The Nursing Home Care Act is not the patient's exclusive remedy. *Estate of Hicks v. Urban East*, 2004 OK 36, 92 P.3d 88. The Act provides that the plaintiff may seek any recovery permitted by law. 63 O.S. § 1–1939(B),(C).

¶ 9 Wrongful death claims were not cognizable at common law; the right of action for personal injury stood extinguished by the death of the injured party. This rule was abrogated by Oklahoma's wrongful death statute. A cause of action for injury to the person is now survivable and a new and

Cleo Boler's physical injuries, mental pain and suffering, loss of companionship and parental care from Cleo Boler, reasonable expenses for necessary medical care, treatment and services; funeral and burial expenses. The wrongful death claim was for all compensatory, actual and punitive damages allowed by law including, but not limited to, Cleo Boler's pain and suffering; the grief of her children; the loss of companionship and parental care from Cleo Boler to her children; the loss of companionship suffered by her children; her children's grief; the loss of Cleo Boler's society, services, companionship and marriage relationship suffered by her family; the medical and burial expenses and the loss of financial support of Cleo Boler to her children.

4. The trial court's order was filed April 16, 2013.

5. The trial judge stated:

I am going to follow the rationale of the Utah case and hold that, particularly in Oklahoma, since there is a constitutional provision as there was in the Utah case, that sort of elevated the status of a wrongful death claim. That, coupled

with the fact that in Oklahoma it talks about it being derivative. And I think we all agree it is derivative. I believe that goes more to the extinguishment of the cause of action as opposed to whether or not someone chose to go to arbitration.
\* \* \*
So I am going to rule, as a matter of law, that a wrongful death action is a separate and distinct cause of action. And that, although it is derivative, and that the decedent's claim has to have not been extinguished, I think that it doesn't apply to the arbitration clause in this case.
So I'm not going to order this case to arbitration. But it is also my understanding that this is an issue that can be immediately appealed. Tr. pp. 45–46.
\* \* \*
Maybe we should just make that clear in the order that I'm ruling solely on wrongful death. I did not take evidence on the interstate commerce aspect of that. Tr. p. 53.
The trial judge did not rule on the plaintiff's unconscionability argument, stating that she would have wanted to take evidence on that issue. Tr. p. 48.

independent wrongful death claim has been created. *Ouellette v. State Farm Ins. Co.*, 1994 OK 79, 918 P.2d 1363, 1366. On appeal, the issue is whether claims brought by non-signatory wrongful death claimants must be arbitrated. Title 12 O.S. § 1053 provides that wrongful death claims lie if, at the time of his or her death, the decedent had a right of recovery for the injury in suit. The parties disagree on whether wrongful death claims in Oklahoma are wholly or partially derivative and the effect of that distinction.

■ ¶ 10 Grace argues that wrongful death claims are entirely derivative claims, binding on the next of kin, predicated solely upon the right of action personal to the decedent because the claim must have been one the decedent could have brought if she had lived. Grace directs our attention to cases in which the decedent's execution of a release and satisfaction of the claim meant there was no action surviving the death. See *Haws v. Luethje*, 1972 OK 146, 503 P.2d 871. Grace argues that Cleo Boler's personal representative can maintain only an action that Cleo Boler could have maintained if she had survived; otherwise, her rights are "enlarged" by Oklahoma's wrongful death statute. Thus, because she contracted to arbitrate her claims against Grace, her personal representative must arbitrate the wrongful death claim. Grace points to *Riley v. Brown and Root, Inc.*, 1992 OK 114, 836 P.2d 1298, 1300, 1301, for the proposition that such claims are wholly derivative of rights held by the decedent and the heirs are bound by the decedent's contractual agreement to arbitrate:

> "The action for wrongful death is not a separate and distinct tort, but is an action which derives from the rights of the decedent (citation omitted). Whatever rights the decedent might have had in his life accrue to the personal representative at death, thus overcoming the common law barrier of death."

¶ 11 Boler, in opposition, argues that the wrongful death claim is not wholly derivative because the statute only requires that the decedent must have had a right to sue while alive. The claim is derivative only in the sense that it must not have been *extinguished* before death. Boler relies on *Ouel-*

*lette v. State Farm Ins. Co.*, 1994 OK 79, 918 P.2d 1363, 1366, which states that Oklahoma's Wrongful Death Act created a new cause of action for pecuniary losses suffered by the deceased's spouse and next of kin by reason of his or her death and recovery under the Act does not go to the estate of the deceased, but inures to the exclusive benefit of the surviving spouse and children or next of kin. Thus, Boler argues, a wrongful death claim is new and independent of the claim belonging to the deceased, a conclusion bolstered by Art. 23, § 7 of the Oklahoma Constitution which provides that the right of action to recover damages for injuries resulting in death shall never be abrogated. Boler argues that basic rules of contract law prevent the arbitration agreement from being enforceable against parties who did not sign the agreement in their personal capacities.

■ ¶ 12 The first task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate that dispute. *Wilkinson v. Dean Witter Reynolds, Inc.*, 1997 OK 20, ¶ 9, 933 P.2d 878, 880 (citing *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 626, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985)). The existence of an arbitration agreement is governed by principles of state law. *Id.*

¶ 13 Courts in other states have differed when considering whether the decedent's heirs are bound by an arbitration agreement signed by or on behalf of the decedent. Courts in other states have based their rulings on whether the wrongful death claims are deemed wholly or only partially derivative. If wrongful death actions are considered independent and separate causes of action, courts are more likely to hold that the beneficiaries are not bound by the decedent's agreement to arbitrate. If wrongful death actions are deemed wholly derivative in nature, beneficiaries are generally held to be bound by a decedent's arbitration agreement. *In re Labatt Food Service, L.P.*, 279 S.W.3d 640, 647 (Tex.2009).

¶ 14 Even when construing statutes that predicate a wrongful death claim on the ability of the decedent to bring suit if he or she had lived, courts are split on whether the

estate and heirs are bound by an arbitration agreement signed by the decedent. See *Laizure v. Avante at Leesburg, Inc.*, 109 So.3d 752, 761 (Fla.2013). The "wholly derivative" states reason that if the decedent would have to arbitrate his or her claims, the heirs must arbitrate their claims because they "stand in the shoes of" the decedent. Courts that treat wrongful death claimants as wholly derivative include Florida, New Mexico, California, Texas, Mississippi, Alabama, and Michigan.[6] Other states, such as Arizona, Pennsylvania, Kentucky, Illinois, Washington, Missouri, Utah, and Ohio, have treated wrongful death claims as independent from claims the decedent had and have held that the damages are not awarded to those plaintiffs on the decedent's behalf.[7] Colorado has looked to whether the contract reflects the intent of the parties to bind the beneficiaries.[8]

¶ 15 An example cited by Grace, *In re Labatt Food Service, L.P.*, 279 S.W.3d 640, 647 (Tex.2009), was a wrongful death action brought by deceased employee's parents and children against his employer. The plaintiffs did not specifically challenge the validity of the arbitration agreement, but argued that the entire contract was void. The district court denied the employer's motion to compel arbitration and the employer petitioned for writ of mandamus. The Supreme Court of Texas held that an arbitration agreement in a contract between an employee and his employer requiring arbitration pursuant to the Federal Arbitration Act was, under Texas law, binding on the beneficiaries, even though they did not sign the agreement. They interpreted Texas law to mean that even though the wrongful death damages are

for the exclusive benefit of the beneficiaries and meant to compensate them for their personal losses, the cause of action is entirely derivative of the decedent's rights. The court held that it was for the arbitrator, rather than the court, to resolve the claim that the entire contract was invalid.

¶ 16 The case relied on by the trial court, *Bybee v. Abdulla*, 189 P.3d 40 (Utah 2008), held that the wrongful death claim was not wholly derivative. In that case the surviving spouse brought a wrongful death action against her husband's physician, alleging that his negligent care caused her husband to commit suicide. The physician filed a motion to compel arbitration which was denied. On appeal, the Supreme Court of Utah affirmed. The surviving spouse argued that she could not be compelled to arbitrate because she was not bound to a contract that she did not sign, and further that she had a constitutional right to pursue her wrongful death claim in court because it is a cause of action based on injury to the heirs rather than to an injury sustained by the patient. The court likewise found that she was not a third-party beneficiary who could be bound by the arbitration agreement. *Bybee* has been distinguished or held unpersuasive by the Florida Supreme Court in *Laizure v. Avante at Leesburg, Inc.*, 109 So.3d 752 (Fla.2013), by the Texas Supreme Court in *In re Labatt Food Service, supra*, by the California Supreme Court in *Ruiz v. Podolsky*, 50 Cal.4th 838, 114 Cal.Rptr.3d 263, 237 P.3d 584 (2010), and by the New Mexico Court of Appeals in *Estate of Krahmer ex rel. Peck v. Laurel Healthcare Providers*, 315 P.3d 298 (N.M.App.2013). The Court of Appeals of New Mexico strictly construed that state's

---

**6.** *Laizure v. Avante at Leesburg, Inc.*, 109 So.3d 752 (Fla.2013); *Estate of Krahmer ex rel. Peck v. Laurel Healthcare Providers, LLC*, 315 P.3d 298 (N.M.App.2013); *Ruiz v. Podolsky*, 50 Cal.4th 838, 114 Cal.Rptr.3d 263, 237 P.3d 584 (2010); *In re Labatt Food Service, L.P.*, 279 S.W.3d 640 (Tex.2009); *Trinity Mission Health & Rehab. of Clinton v. Estate of Scott ex rel. Johnson*, 19 So.3d 735 (Miss.Ct.App.2008); *Briarcliff Nursing Home, Inc. v. Turcotte*, 894 So.2d 661 (Ala.2004); *Ballard v. Southwest Detroit Hosp.*, 119 Mich. App. 814, 327 N.W.2d 370 (1982).

**7.** *Estate of Decamacho ex rel. Guthrie v. La Solana Care and Rehab., Inc.*, 234 Ariz. 18, 316 P.3d

607 (Ariz.App.2014); *Pisano v. Extendicare Homes, Inc.* 77 A.3d 651 (Pa.Super.2013); *Ping v. Beverly Enterprises, Inc.* 376 S.W.3d 581 (Ky. 2012); *Carter v. SSC Odin Operating Co., LLC*, 2012 IL 113204, 364 Ill.Dec. 66, 976 N.E.2d 344 (2012); *Woodall v. Avalon Care Center–Federal Way, LLC*, 155 Wash.App. 919, 231 P.3d 1252 (2010); *Lawrence v. Beverly Manor*, 273 S.W.3d 525 (Mo.2009); *Bybee v. Abdulla*, 189 P.3d 40 (Utah 2008); *Peters v. Columbus Steel Castings Co.*, 115 Ohio St.3d 134, 873 N.E.2d 1258 (2007).

**8.** *Allen v. Pacheco*, 71 P.3d 375 (Colo.2003).

Wrongful Death Act as transmitting the resident's cause of action against the nursing home to her personal representative. Because the resident was bound to arbitrate her claims, so was her personal representative. The court observed that New Mexico does not have a "survival" statute that is distinct from its Wrongful Death Act. The New Mexico wrongful death statute does not create a new cause of action and the Court held that the available remedies were limited to only those recoverable by the decedent. *Estate of Krahmer, supra.*

¶ 17 In *Laizure,* the Florida Supreme Court based its decision on the derivative nature of wrongful death actions in Florida. Because the signing party's estate and heirs are bound by defenses that could be raised in a personal injury suit brought by the decedent, as well as by releases signed by the decedent, they are also bound by the choice of forum agreement signed by the decedent in a wrongful death action arising out of the treatment and care of the decedent. The court stated that although Florida's wrongful death act has long been characterized as creating a new and distinct right of action from the right of action the decedent had prior to death, the actions are derivative because they are dependent on a wrong committed against the decedent. 109 So.3d at 760–61. Defenses that would have been available to the defendant if the decedent had lived are equally available to the defendant in a wrongful death action.

¶ 18 Courts that are in accord with *Bybee, supra,* apply a similar analysis and conclude that the wrongful death claim is not wholly derivative. In *Ping v. Beverly Enterprises, Inc.,* 376 S.W.3d 581 (Ky.2012), the arbitration agreement was optional and was not a condition of admission. The court determined that the daughter's durable power of attorney did not authorize her to bind her mother to the arbitration agreement she signed. It also determined that even if the decedent were bound by the arbitration agreement, the wrongful death claimants would not be bound because their statutorily-distinct claim does not derive from any claim on behalf of the decedent. The court discussed the distinction between survival

claims, which the estate brings on its own behalf, and the wrongful death claim, which the representative brings not on behalf of the estate, but on behalf of the statutory wrongful death beneficiaries. The Kentucky wrongful death statute provides that the wrongful death action shall be prosecuted by the personal representative and the amount recovered, less certain expenses, shall be for the benefit of and go to the kindred of the deceased as specified in the statute. It recognized that some states treat the wrongful death action as derivative of the personal injury claim, while in others the two claims are regarded as independent. It observed that the constitutional status of the wrongful death claim in Kentucky is a strong indication of that claim's independence. It concluded that under their law the wrongful death claim accrues separately to the wrongful death beneficiaries and is meant to compensate them for their own pecuniary loss; thus, the court agreed with *Bybee* and other cases holding that a decedent cannot bind his or her beneficiaries to arbitrate their wrongful death claim.

¶ 19 In *Estate of Decamacho ex rel. Guthrie v. La Solana Care and Rehab, Inc.,* 234 Ariz. 18, 316 P.3d 607 (Ariz.App.2014), the Arizona Court of Appeals ruled that the arbitration agreement was valid and enforceable but because the wrongful death claim was not wholly derivative of the resident's rights it was therefore not subject to the arbitration clause. It recognized that the rules of contract interpretation apply equally in the context of arbitration clauses, citing the Arizona Supreme Court in *Southern California Edison Co. v. Peabody Western Coal Co.,* 194 Ariz. 47, 977 P.2d 769, 773. The court concluded that a claim under Arizona's equivalent of our Nursing Home Care Act, belonged to the decedent and survived as an asset of her estate. The statutory beneficiaries under the wrongful death claim were not subject to the arbitration clause because the wrongful death statute confers an original and distinct claim for the damages sustained by the statutory beneficiaries named therein and is not derived from, nor a continuation of, claims that formerly existed in a decedent. 316 P.3d at 613.

¶ 20 The Supreme Court of Illinois rejected a nursing home's argument that the personal representative is merely the conduit by which the rights of the decedent are litigated after his or her death. *Carter v. SSC Odin Operating Co., LLC*, 2012 IL 113204, 364 Ill.Dec. 66, 976 N.E.2d 344 (2012). Illinois' wrongful death statute provides that where the decedent could have maintained an action against the nursing home if death had not ensued, the defendant shall be liable in an action for damages brought by the personal representative.[9] The statute provides that no action can be brought if the decedent had brought a claim on the same occurrence which settled or had judgment rendered. The Illinois Supreme Court stated:

"Defendant overstates the significance of the derivative nature of a wrongful death action. Although a wrongful-death action is dependent upon the decedent's entitlement to maintain an action for his or her injury had death not ensued, neither the Wrongful Death Act nor this court's case law suggests that this limitation on the cause of action provides a basis for dispensing with basic principles of contract law in deciding who is bound by an arbitration agreement.

¶ 21 In the Illinois case, the special administrator signed an arbitration agreement with the nursing home as resident's legal representative and the resident herself signed a second arbitration agreement with the nursing home. After the resident's death, the special administrator of the decedent's estate brought an action asserting claims under the Nursing Home Care Act and claims under the Wrongful Death Act against the nursing home operator. The court held that the administrator was bound to arbitrate the *survival* claims under the Nursing Home Care Act, but was not bound to arbitrate the claims under the Wrongful Death Act. The plaintiff could not be compelled to arbitrate the wrongful death claim because she did not sign the arbitration agreement in her individual capacity, a basic principle of contract law.[10]

¶ 22 The Illinois nursing home made essentially the same arguments Grace has made in this case: that a wrongful death action is derivative of, and thus limited to, what the decedent's cause of action against the defendant would have been if she had lived. If the decedent's claim would have been subject to arbitration, then the wrongful death claim is likewise subject to arbitration, the nursing home argued. The Illinois court observed that arbitration is a creature of contract, and under basic principles of contract law only parties to the contract may compel arbitration or be compelled to arbitrate. Although the Federal Arbitration Act

9. The Illinois Wrongful Death Act is codified at 740 ILCS 180, et seq. Section 180/1 provides:

Whenever the death of a person shall be caused by wrongful act, neglect or default, and the act, neglect or default is such as would, if death had not ensued, have entitled the party injured to maintain an action and recover damages in respect thereof, then and in every such case the person who or company or corporation which would have been liable if death had not ensued shall be liable to an action for damages, notwithstanding the death of the person injured, and although the death shall have been caused under such circumstances as amount in law to felony. No action may be brought under this Act if the decedent had brought a cause of action with respect to the same underlying incident or occurrence which was settled or on which judgment was rendered.

Section 180/2 provides, in pertinent part:

Every such action shall be brought by and in the names of the personal representatives of such deceased person and, except as otherwise

hereinafter provided, the amount recovered in every such action shall be for the exclusive benefit of the surviving spouse and next of kin of such deceased person. In every such action the jury may give such damages as they shall deem a fair and just compensation with reference to the pecuniary injuries resulting from such death, including damages for grief, sorror and mental suffering, to the surviving spouse and next of kin of such deceased person.

The amount recovered in any such action shall be distributed by the court in which the cause is heard or, in the case of an agreed settlement, by the circuit court, to each of the surviving spouse and next of kin of such deceased person in the proportion, as determined by the court, that the percentage of dependency of each such person upon the deceased person bears to the sum of the percentages of dependency of all such persons upon the deceased person.
* * *

10. The Illinois Supreme Court considered other contractual issues that are not presented in this appeal.

(FAA) directs courts to place arbitration agreements on equal footing with other contracts, it does not require parties to arbitrate when they have not agreed to do so. Arbitration under the FAA is a matter of consent, not coercion. The Illinois court held that the special representative was a nominal party effectively filing suit on behalf of resident's next of kin. The court recognized the difference between the survival cause of action and the wrongful death cause of action.[11] The case was decided on basic principles governing contract law.

¶ 23 Oklahoma distinguishes survivor actions (those that could be brought by the decedent while alive) from wrongful death actions.[12] A wrongful death action pursuant to § 1053 may be maintained by the personal representative of the deceased person, for and on behalf of the surviving spouse and children and the parents.[13] The potential damages include: the loss of consortium and grief of the surviving spouse; the mental pain and anguish suffered by the deceased, which shall be distributed to the surviving spouse and children, or next of kin, in the same proportion as personal property of the decedent; the pecuniary loss to the survivors based on the projected duration of the decedents life, which must inure to the exclusive benefit of the surviving spouse and children; and grief and loss of companionship of the parents and children of the decedent. The amounts recovered are distributed to those designated parties as specified in the statute. These are distinct claims for damages sustained by the statutory beneficiaries.

■ ¶ 24 Oklahoma's Constitution, Art.23 § 7, provides that the right of action to recover damages for injuries resulting in death shall never be abrogated. The Oklahoma Arbitration Act provides that an agreement to submit any existing or subsequent controversy to arbitration is valid, enforceable and irrevocable except upon a ground that exists in law or equity for the revocation of a contract. 12 O.S. § 1857(A). If necessary, a court shall decide whether an agreement to arbitrate exists or whether a controversy is subject to an agreement to arbitrate. 12 O.S. § 1857(B). Oklahoma has recognized that although the FAA favors arbitration when it is the parties' contractual choice of a remedial forum, courts will not impose arbitration upon parties where they have not agreed to do so. *Okla. Oncology & Hematology P.C. v. U.S. Oncology, Inc.*, 2007 OK 12 ¶ 22, 160 P.3d 936 (arbitration is a matter of consent, not coercion, citing *Volt Info. Sciences Inc. v. Bd. of Trustees of Leland Stanford Jr. Univ.*, 489 U.S. 468, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989)). To assure that the parties have consented to arbitration, the courts will decide whether there is a valid enforceable arbitration agreement, whether

11. A survival action allows for recovery of damages for injury sustained by the deceased up to the time of death. A wrongful death action covers the time after death and addresses the injury suffered by the next of kin due to the loss of the deceased, rather than the injuries personally suffered by the deceased prior to death. Id. at ¶ 34.

12. 12 O.S. § 1051 provides, in pertinent part:

In addition to the causes of action which survive at common law, causes of action for ... an injury to the person ... shall also survive; and the action may be brought, notwithstanding the death of the person entitled or liable to the same.

13. 12 O.S.2011 § 1053 provides, in pertinent part:
A. When the death of one is caused by the wrongful act or omission of another, the personal representative of the former may maintain an action therefor against the latter.. if the former might have maintained an action, had he or she lived, against the latter, or his or her representative, for an injury for the same act or omission.

The action must be commenced within two (2) years.
B. The damages recoverable in actions for wrongful death ... shall included the following: Medical and burial expenses ...

The loss of consortium and the grief of the surviving spouse, which shall be distributed to the surviving spouse.

The mental pain and anguish suffered by the decedent, which shall be distributed to the surviving spouse and children, if any, or next of kin in the same proportion as personal property of the decedent.

The pecuniary loss to the survivors based upon properly admissible evidence with regard thereto ..., which must inure to the exclusive benefit of the surviving spouse and children, if any, or next of kin, and shall be distributed to them according to their pecuniary loss.

The grief and loss of companionship of the children and parents of the decedent, which shall be distributed to them according to their grief and loss of companionship.
* * *

the parties are bound by it and whether the parties agreed to submit a particular dispute to arbitration.

¶ 25 Consent to arbitrate is an essential component of an enforceable arbitration agreement. The personal representative and the heirs are not bound to an agreement that they did not sign. Judy Little did not sign in her individual capacity and did not, by signing on her mother's behalf, express an intent to relinquish any rights she might possess in her individual capacity.

¶ 26 We agree with the courts that have held that a decedent cannot bind the beneficiaries to arbitrate their wrongful death claim. Oklahoma's Wrongful Death Act created a new cause of action for pecuniary losses suffered by the deceased's spouse and next of kin by reason of his or her death. Recovery under the wrongful death act does not go to the estate of the deceased, but inures to the exclusive benefit of the surviving spouse and children or next of kin. *Ouellette v. State Farm Ins. Co.*, 1994 OK 79, 918 P.2d 1363, 1366. If the decedent extinguishes the claim while alive, however, there is no claim surviving the decedent's death. *Haws v. Luethje*, 1972 OK 146, 503 P.2d 871.

¶ 27 We conclude that the wrongful death claim accrues separately to the wrongful death beneficiaries and is intended to compensate them for their own losses. The personal representative is prosecuting the wrongful death claim on behalf of the statutory beneficiaries set out in 12 O.S. § 1053. The trial court did not err in denying Grace's motion to compel arbitration of the wrongful death claim.

**AFFIRMED.**

¶ 28 COLBERT, C.J., REIF, V.C.J., KAUGER, WATT, EDMONDSON, TAYLOR, COMBS, GURICH, JJ., concur.

¶ 29 WINCHESTER, J., dissents.

WINCHESTER, J., dissenting.

¶ 1 Citing a handful of cases from other states, the majority disregards long-standing Oklahoma case law that finds wrongful death actions derivative of the rights of the deceased. *Riley v. Brown and Root, Inc.*, 1992 OK 114, ¶ 10, 836 P.2d 1298, 1300–1301 ("The action for wrongful death is not a separate and distinct tort, but is an action which derives from the rights of the decedent."). While it is true that Oklahoma's wrongful death statutes allow a cause of action to be brought by decedent's beneficiaries, this right of action "is predicated solely upon the right of the action which was personal to the decedent had he lived." *Hill v. Graham*, 1967 OK 10, ¶ 14, 424 P.2d 35, 37–38.

¶ 2 Wrongful death beneficiaries stand in the same legal shoes as the decedent, carrying "no more and no less rights than did the decedent." *Riley v. Brown and Root, Inc.*, 1992 OK 114, ¶ 13, 836 P.2d 1298, 1301. *See also Haws v. Luethje*, 1972 OK 146, ¶ 13, 503 P.2d 871. In *Haws*, the Court held that a wrongful death claimant "may not accomplish what the decedent could not" even though the wrongful death claim does not technically accrue until the decedent's death. To conclude otherwise would provide the beneficiaries with greater rights than those enjoyed by the decedent.

¶ 3 The majority's need to characterize the wrongful death action as either wholly or partially derivative is a distinction without difference. Our case law has long provided that the rights of the beneficiaries are derivative under the wrongful death statutes and, as such, the beneficiaries should be bound by the decedent's agreement to arbitrate. *Riley v. Brown and Root, Inc.*, 1992 OK 114, 836 P.2d 1298.

¶ 4 The majority points out that the Oklahoma Constitution "provides that the right of action to recover damages for injuries resulting in death shall never be abrogated." I agree. Enforcement of the parties' arbitration agreement in this matter in no way abrogates the right to recover damages, it merely changes the forum in which the case is heard. The decedent's daughter, as the authorized legal representative by virtue of a Durable Power of Attorney, signed a three page arbitration agreement, which was contained within the decedent's admission agreement with Appellant. The validity of this agreement has not been challenged by the

beneficiaries on appeal. Because I believe the decedent would be required to arbitrate any claims she may have had against the nursing home prior to her death, her beneficiaries should be compelled to do the same pursuant to the terms of the binding arbitration agreement.[1] Accordingly, I respectfully dissent.

---

1. Significantly, the United States Supreme Court has ruled in favor of the enforceability of an arbitration agreement even when an existing state law, much like the Nursing Home Act in this case, prohibits its enforcement. See *Marmet Health Care Ctr., Inc. v. Brown,* — U.S. —, 132 S.Ct. 1201, 182 L.Ed.2d 42 (2012)(per cu-

riam). In Marmet, the Court upheld an arbitration agreement between a West Virginia nursing home and its resident even though West Virginia law prohibited the enforcement of arbitration agreements in nursing home residential contracts, citing the preemptive force of the Federal Arbitration Act, 9 U.S.C. § 2.