2014 OK 102

### Melody JOHNSON, as next of kin of Arda Lee Churchill, Deceased, Appellee,

v.

### CONVALESCENT CENTER OF GRADY COUNTY, LLC d/b/a Grace Living Center–Chickasha, Stillgrady, LLC, Amity Care, LLC, Mike Dimond, Don Greiner, Individually and d/b/a Don Greiner, Trustee, Kenneth D. Greiner III Revocable Trust d/b/a Don Greiner Trust, Don Greiner, Beneficiary/Trustee, Appellants.

### No. 111922.

Supreme Court of Oklahoma.

Nov. 25, 2014.

---

2. Rule 1.54, Oklahoma Supreme Court Rules, 12 O.S.2011, Ch. 15, App. 1.

3. Rule 1.55, Oklahoma Supreme Court Rules, 12 O.S.2011, Ch. 15, App. 1.

L. Ray Maples, II, Travis Dunn, Jimmie A. Franklin and Nicole R. Snapp–Holloway, Maples Law Firm, Edmond, Oklahoma, and David W. Crowe, Bailey, Crowe & Kugler, LLP, Dallas, Texas, for the Appellee.

Patrick M. Ryan, Phillip G. Whaley, Grant M. Lucky, Ryan Whaley Coldiron Shandy PLLC, Oklahoma City, Oklahoma, and J. Michael Deyong, Gina K. Cheatham, Deyong & Cheatam, PA, Oklahoma City, Oklahoma, for the Appellants.

EDMONDSON, J.

¶1 The issue is whether the trial court erred by denying appellants' (collectively referred to as Grace) motion to compel arbitration of plaintiff's wrongful death claims. The trial judge ruled that Tamera Nelson did not have authority to sign the arbitration agreement on behalf of her grandmother, Arda Lee Churchill, so no valid arbitration agreement existed. We agree with the trial court that no valid arbitration agreement existed because Tamera Nelson was not authorized to make health care decisions for her grandmother under the circumstances. The Health Care Power of Attorney required that Arda Lee Churchill's physician certify that she was not capable of making her own health care decisions and no such certification was made.

¶ 2 Grace Living Center–Chickasha (Grace) is a long-term care facility operating in Chickasha, Oklahoma. Arda Lee Churchill was a resident there from March 13, 2009, when she was admitted, until July 3, 2011, the date of her death. Tamera Nelson signed a Dispute Resolution Provision contained within the admission agreement as "Tamera Nelson POA." The plaintiff, Melody Johnson, is Ms. Churchill's daughter and next of kin. Melody Johnson sued Grace for the wrongful death of her mother. Grace moved to compel the dispute to arbitration based on the Dispute Resolution Provision contained in its admission agreement.

¶ 3 Grace argued the arbitration provision in the admission agreement was valid and covered the claims asserted by Johnson because Tamera Nelson was the authorized legal representative of Ms. Churchill by virtue of a General Durable Power of Attorney executed on December 23, 2008. Melody Johnson argued Tamera Nelson lacked authority under either the Durable Power of Attorney or the Health Care Power of Attorney to bind Ms. Churchill to the arbitration agreement. Therefore, there was no arbitration agreement; in any event, not one that would bind Melody Johnson, a non-signatory. On June 22, 2012, Melody Johnson dismissed the contract claims against all defendants.

¶ 4 After a telephonic hearing, the trial judged ruled that Tamera Nelson was not acting under any power of attorney on the date of Ms. Churchill's admission to Grace's nursing home. Melody Johnson, the only claimant, did not sign the arbitration agreement and the trial judge ruled that the derivative nature of wrongful death claims is not broad enough to mandate procedural defenses such as arbitration against one who did not sign an arbitration agreement. Based on the lack of any binding arbitration agreement, the trial judge ruled that the plaintiff was not required to arbitrate her claims against the defendants.[1]

¶ 5 An order denying a motion to compel arbitration is an appealable order. 12 O.S.2011 1879.[2] The existence of an agreement to arbitrate is a question of law to be reviewed de novo. *Rogers v. Dell Computer Corp.*, 2005 OK 51 ¶ 18, 138 P.3d 826, 831. The case was retained on the Court's own motion.

¶ 6 A court asked to compel arbitration of a dispute must first determine whether the parties agreed to arbitrate that dispute. *Wilkinson v. Dean Witter Reynolds, Inc.*, 1997 OK 20, ¶ 9, 933 P.2d 878, 880 (citing *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 626, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985)). The existence of an arbitration agreement is governed by principles of state law. *Id.* If necessary, a court shall decide whether an agreement to arbitrate exists or whether a controversy is subject to an agreement to arbitrate. 12 O.S.2011 1857(B). Oklahoma has recognized that although the Federal Arbitration Act, 9 U.S.C. 2, favors arbitration when it is the parties' contractual choice of a remedial forum, courts will not impose arbitration upon parties where they have not agreed to do so. *Okla. Oncology & Hematology P.C. v. U.S. Oncology, Inc.*, 2007 OK 12 ¶ 22, 160 P.3d 936 (arbitration is a matter of consent, not coercion, citing *Volt Info. Sciences Inc. v. Bd. of Trustees of Leland Stanford Jr. Univ.*, 489 U.S. 468, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989)). Consent to arbitrate is an essential component of an enforceable arbitration agreement. To assure that the parties have consented to arbitration, the courts will decide whether there is a valid enforceable arbitration agreement, whether the parties are bound by it and whether the parties agreed to submit a particular dispute to arbitration.

¶ 7 Arda Lee Churchill executed a General Durable Power of Attorney naming

---

1. The trial judge also concluded that the FAA did not apply and that Oklahoma's Nursing Home Care Act, 63 O.S. 1–1939(D), (E), prevents arbitration of the matter. The trial judge agreed with the plaintiff that *Bruner v. Timberlane Manor Ltd. Partnership*, 2006 OK 90, 155 P.3d 16, remains good law in Oklahoma. These rulings were unnecessary based on the trial court's finding that no viable arbitration agreement existed.

2. 12 O.S.2011 1879 provides:
A. An appeal may be taken from:
1. An order denying a motion to compel arbitration . . .

Tamera Nelson as her agent, on December 23, 2008. It contains specific restrictions on the agent's powers:

> xi) **Restrictions on Agent's Powers.** Regardless of the above statements, my agent (1) cannot execute a will, a codicil or any will substitute on my behalf; (2) cannot change the beneficiary on any life insurance policy that I own; (3) cannot make gifts on my behalf; and (4) may not exercise any powers that would cause assets of mine to be considered taxable to my agent or my agent's estate for purposes of any income, estate, or inheritance tax, and *(5) cannot contravene any medical power of attorney I have executed whether prior or subsequent to the execution of this Power of Attorney. (Emphasis added.)*

¶ 8 Arda Lee Churchill granted a Medical Power of Attorney to Tamera Nelson on December 29, 2008. It defines "health care decision" to mean consent, refusal of consent, or withdrawal of consent to any care, treatment, service or procedure to maintain, diagnose, or treat an individual's physical or mental condition. It takes effect only *if Arda Lee Churchill becomes unable to make her own health care decisions and that fact is certified in writing by her physician.* Grace argues that signing a nursing home admission agreement that contains a Dispute Resolution Provision is not a "health care decision."

¶ 9 Plaintiff directs our attention to *Moffett v. Life Care Centers of America,* 187 P.3d 1140, 1147 (Colo.App.2008), *aff'd,* 219 P.3d 1068 (Colo.2009), in which the court concluded that a person who holds a medical durable power of attorney, in selecting a long-term health care facility, has the power to execute applicable admission forms, including arbitration agreements, unless that power is restricted by the principal. Plaintiff points to the fact that Grace's arbitration agreement was mandatory because Arda Lee Churchill would not be admitted without it.[3] Plaintiff cites *Dickerson v. Longoria,* 414 Md. 419, 995 A.2d 721, 739 (2010):

> "If signing the arbitration agreement is necessary to receive health care, then the decision to sign the agreement is a health care decision because the receipt of health care depends on whether the patient agrees to arbitrate his or her claims. In that case, the decision to sign the arbitration agreement is effectively a decision about where and whether to receive health care, either from a facility that requires the patient to sign an arbitration agreement, from a facility that does not impose such a requirement, or from no facility at all."

¶ 10 We observe that Oklahoma's Do–Not–Resuscitate Act, 63 O.S.2011 3131.3(6) defines "health care decision" as a decision to give, withhold, or withdraw informed consent to any type of health care including, but not limited to, medical and surgical treatments including life-prolonging interventions, nursing care, hospitalization, treatment in a nursing home or other extended care facility, home health care and the gift or donation of a body organ or tissue. Title 63 O.S. 2200.21A(3) of the Oklahoma Uniform Anatomical Gift Act defines "health care decision" as any decision regarding the health care of the prospective donor.

¶ 11 The Medical Power of Attorney in this case would not become effective until a determination has been made in writing by her physician that Arda Lee Churchill lacked capacity to make those decisions. There is no record of a statement from her physician certifying that she lacked capacity to make her own health care decisions; therefore, the Medical Power of Attorney had not become effective at the time the admission documents were signed by Tamera Nelson.

¶ 12 Grace argues that it was the Durable Power of Attorney that gave Tamera Nelson authority to sign the admission contract/arbitration agreement binding Arda Lee Churchill. We cannot agree. The Durable Power of Attorney authorizes Arda Lee Churchill's agent to make decisions affecting her business and financial matters but it prohibits her from making decisions contrary to the Medical Power of Attorney. Grace does not controvert that signing the arbitration agreement was a requirement of admission to the facility. Where arbitration is a condition of

---

**3.** R. at p. 73.

admission, it becomes a "health care decision." *Dickerson v. Longoria,* 414 Md. 419, 995 A.2d 721, 729 (2010).[4]

¶ 13 In *Dickerson,* the Maryland high court took the position that if signing the arbitration agreement was not a requirement for admission, then signing the arbitration agreement was not a health care decision *or* a financial decision made on the decedent's behalf, but rather was a decision to waive his right of access to the courts and right to a trial by jury. The evidence reflected that the patient conferred on his agent the authority to make health care and financial decisions on his behalf, but no evidence suggested that the patient had authorized his agent to waive his right of access to the courts. Consequently, the Maryland court found that the estate was not bound by the arbitration agreement included in the nursing home's admission agreement.

¶ 14 The Durable Power of Attorney and the Health Care Power of Attorney in this case were executed less than one week apart, and the same person, Tamera Nelson, was named agent in each. This indicates an intention on Ms. Churchill's part to distinguish the powers and duties given to her agent in each document. The Durable Power of Attorney authorizes her agent to make, with limitation, decisions regarding her business and finances. Her health care agent is to make decisions on her behalf regarding her health care only if she becomes incapacitated, leaving her free to make her own health care decisions for as long as she is able to do so.

¶ 15 In *Boler v. Security Health Care, L.L.C.,* 2014 OK 80, 336 P.3d 468, we affirmed an order of the District Court of Oklahoma County denying a nursing home's motion to compel arbitration, on the grounds that the decedent's heirs were not bound by an arbitration agreement executed by the decedent's representative. We held that the decedent's next-of-kin and personal representative did not sign the contract and were not bound by an arbitration agreement included in a contract of admission signed on the resident's behalf. The authority of the agent to sign the agreement on Cleo Boler's behalf was not in dispute.

¶ 16 The Medical Power of Attorney takes effect only if her physician certifies in writing that Arda Lee Churchill has become unable to make her own health care decisions. There is no dispute that no such certification was made by Arda Lee Churchill's physician. The trial judge determined that no valid arbitration agreement existed and under the facts in this case we agree. We find that Tamera Nelson lacked authority to bind her grandmother, Arda Lee Churchill, to arbitration. Thus, we need not address other rulings made by the trial judge and other issues raised in the petition in error.

**TRIAL COURT AFFIRMED.**

Concurs: COLBERT, C.J., REIF, V.C.J., KAUGER, WATT, TAYLOR, COMBS, GURICH, JJ.

Dissent: WINCHESTER, J.

---

4. The Maryland court noted that signing the arbitration agreement was not a condition of admission, so it was not a health care decision, but was

a decision regarding legal rights in the event of litigation.